UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| TAMMIE RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:20-CV-38-REW |
| v. ) | |
| ) | OPINION & ORDER |
| ANDREW SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Tammie Richardson appeals the Commissioner's denial of her application for Disability Insurance Benefits (DIB). The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **DENIES** the Commissioner's Motion (DE 20) and **GRANTS** Richardson's motion (DE 17) **IN PART**, and **REMANDS** this matter for appropriate reconsideration. On remand, the ALJ must correct his failure to discuss how (indeed whether) the RFC accounted for documented mental limitations (or why he excluded same), including the discrepancies between the Step 2 and Step 4 findings regarding Dr. Ollie Dennis, and further the ALJ must appropriately weigh and discuss Dr. Frank A. Burke's opinion evidence. The ALJ's treatment and state of the record necessitate remand.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Richardson is currently 60 years old. *See* R. at 65. She alleges disability beginning on July 23, 2016. R. at. 168. Richardson applied for DIB benefits in December 2016. R. at. 168. The SSA denied her claims initially on February 22, 2017, R. at. 65, and upon reconsideration on March 13, 2017. R. at. 82. Richardson requested a hearing on March 20, 2017, R. at. 115, and ALJ Roger

1

L. Reynolds held a video hearing on November 15, 2018. At the hearing, non-lawyer Kevin McDowell represented Richardson. R. at. 37. Richardson and impartial vocational expert (VE) Martha R. Goss testified. R. at. 38. ALJ Reynolds subsequently denied Richardson's claims on January 30, 2019. R. at. 15. The Appeals Council denied review, and thus upheld the ALJ's decision, on December 6, 2019. R. at. 4.

The ALJ made several particular findings in the required sequence.[1] He determined that Richardson had not engaged in substantial gainful activity since her July 23, 2016, alleged onset date. R. at. 20. The ALJ next determined that Richardson had severe impairments: degenerative disc desiccation and a disc bulge at the T8-9 level; left knee tendinosis; and non-insulin dependent diabetes mellitus. R. at. 20. However, ALJ Reynolds then found that Richardson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at. 22. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at. 23–28. ALJ Reynolds found that Richardson was able to perform her past relevant work, as generally performed. R. at 28–29. The ALJ, with VE testimony in support, also found that, given Richardson's particular characteristics and RFC, there are jobs (medium exertion, unskilled), existing in significant numbers in the national economy, that Richardson can perform. *Id.* Based on these considerations, the ALJ ruled that Richardson was not under a disability from July 23, 2016, through the date of decision. R. at. 29. Dissatisfied with the result of the SSA's subsequent administrative process, which denied her relief, Richardson turned to federal court for review.

---

[1] The ALJ—as a preliminary predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(c)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A))—found that Richardson satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through December 31, 2020. R. at. 20.

## II. ANALYSIS

### A. Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[2] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 15 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the

---

[2] That is, those records relevant to the particular issues Richardson presents for review.

Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The Court's inquiry continues: "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where the error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292). The Court "must reverse and remand if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004)).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial

gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines RFC and considers whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

  B.  <u>The ALJ reversibly erred.</u>

Richardson makes two arguments: that ALJ Reynolds erroneously failed to include mental limitations or limitations pursuant to Richardson's use of a cane in the RFC, DE 18 at 4–8, and that the ALJ erred in evaluating certain medical evidence in the record, *id.* at 8–12. The Court evaluates each argument in turn.

*Limitations Omitted from the RFC*

Richardson claims that ALJ Reynolds failed to include all of Richardson's established limitations when making the Step 4 RFC determination. Specifically, Richardson points to two

5

omissions: 1) including the psychiatric review technique (PRT) analysis in Step 2, but failing to account for the analysis in Step 4, DE 18 at 4–6; and 2) failing to account for Richardson's cane use, *id.* at 6–8.

First, Richardson claims that ALJ Reynolds erred when formulating the RFC by not including the findings of the PRT in the determination. Essentially, Petitioner claims that failing to include PRT findings in an RFC is legal error where mental limitations "would actually preclude the ability to perform [Richardson's past relevant work]." DE 18 at 6.

An ALJ assesses a claimant's mental impairments at Step 2 pursuant to the regulations. *See* 20 C.F.R. § 404.1520a. The assessment rates degrees of limitation in four functional areas: "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or mange oneself." 20 C.F.R. § 404.1520a(c). These four areas are referenced in the ALJ's decision as the "paragraph B" criteria. R. at 21.

Importantly, Step 2 findings are merely the result of a threshold inquiry. *See Deaner v. Comm'r of Soc. Sec.*, --- Fed. Appx. ---, 2020 WL 7490475 at *3 (6th Cir. Dec. 21, 2020); 20 C.F.R. § 404.1523(c). Limitations identified through assessment of the "paragraph B" criteria are not made to supplant an RFC determination. *See* SSR 96-8p, 1996 WL 374184 at *3 (SSA July 2, 1996). "[T]he characterization of other impairments as severe or non-severe is 'legally irrelevant'" to the ultimate RFC determination. *Deaner*, --- F. App'x ---, 2020 WL 7490475 at *3 (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). According to the ALJ's decision, the "residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. at 22.[3] The ALJ properly moved through

---

[3] The Sixth Circuit has not ruled on whether the ALJ is *required* to include "paragraph B" findings into his or her ultimate RFC determination. *See Allen v. Colvin*, No. 3:15-00947, 2016 WL 7664310, at *4 (M.D. Tenn. Nov. 17, 2016) (discussing Circuit landscapes). District courts have,

Step 2 (and Claimant does not criticize that Step) and then claimed, generically at least, to incorporate that Step, to "reflect[] the degree of limitation . . . found in the . . . mental function analysis," R. at 22, when formulating Richardson's RFC.

When confronted with the RFC formulation, however, ALJ Reynolds included **no** mental limitations. R. at 26–28. The ALJ discussed and incorporated record evidence regarding Richardson's claims of anxiety and dyslexia. The ALJ noted Richardson's hearing testimony in these areas R. at 24. The ALJ considered and gave considerable weight to the opinions of Christi Bruening, Ph.D. and Tonya Gonzalez, Psy.D., disability determination services (DDS) physicians regarding mild impairments. R. at 26. The ALJ discussed and gave (or purported to give) great weight to the opinion of Ollie C. Dennis, Ph.D.,[4] regarding Richardson's mental capabilities. R. at 26–27. Finally, the ALJ gave marginal weight to the report of Danny Richardson, Tammie Richardson's ex-husband, based upon his observations of the Plaintiff's daily activities. R. at 27.

Despite concluding that there were "no more than mild" mental limitations in Step 2, explicitly incorporating that finding into the RFC discussion, and giving great weight to an opinion that concluded there were "mild to moderate" mental limitations, the ALJ's decision did not explain why the judge omitted all mental limitations from the RFC formulation. By not including a discussion of why the RFC excluded Richardson's mental impairments, the ALJ did not provide "a more detailed" analysis of these mental impairments, at Step 4, as SSR 96-8p instructs. *See* SSR 96-8p, 1996 WL 374184 at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential

---

however, "held that an ALJ is not required to include Paragraph B or C findings from Step Three into his or her RFC determination." *Benitez v. Saul*, CIVIL ACTION NO. 3:19CV-00392-RSE, 2020 WL 4820717, *6 (W. D. Ky. Aug. 19, 2020) (collecting cases). ALJ Reynolds's decision, claiming to explicitly incorporate the Step Two findings into the RFC determination (which was his statement in the decision), was not itself error. Did that meaningfully occur? Thus, the Court's problem.

[4] Dr. Dennis was referred to by both the ALJ in his decision and Plaintiff in briefing as "Dr. Ollie."

7

evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C[.]"). Remand is appropriate here where the ALJ followed an incorrect legal standard. *See Kalmbach*, 409 F. App'x at 859. The ALJ found mild limitations in three of four "paragraph B" categories. R. at 21–22. Dr. Dennis, given great weight, particularly opined that Richardson faced mild to moderate limitations regarding social interaction and adaptation to a normal work environment. R. at 313. Despite these limits, the RFC contains not a whisper about such non-exertional factors; the ALJ instead found Richardson capable of all medium work, with only certain postural modifications. Perhaps the ALJ rationally believed the functional limits had no impact on Richardson's work ability. Certainly, not every mild or moderate limitation signifies a compromised work ability. The Court simply cannot discern this because the ALJ did not in any way address the matter. Meaningful review requires more. *Allen v. Comm'r of Soc. Sec.*, No. 2:17-CV-1154, 2018 WL 6060446, at *4 (S.D. Ohio Nov. 20, 2018), *report and recommendation adopted*, No. 2:17-CV-1154, 2018 WL 6681225 (S.D. Ohio Dec. 18, 2018) ("But where, as here, the ALJ assigns great weight to a particular opinion and states that it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so."); *Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("The mental limitation finding in this case was made at step two, and then it simply vanished from the remainder of the decision. This court cannot evaluate why that occurred or whether it was proper when the ALJ provides no 'bridge' from the finding to its later exclusion.").

Second, Richardson claims that ALJ Reynolds erred by not accounting for her cane use when formulating the RFC. DE 18 at 6–7. If the RFC reflected Richardson's cane use, per the Plaintiff, "the ability to perform medium work is eliminated completely[.]" *Id.* at 7. Plaintiff's

8

argument, however, hinges on her cane use being substantially documented in the record. In contrast, the ALJ noted that the record did not show "that the claimant was prescribed a cane." R. at 26. Furthermore, The ALJ noted that "[m]ost of the records show that the claimant had a normal gait and was able to ambulate without the use of an assistive device." *Id.*

The ALJ's exclusion of limitations based upon unprescribed cane use is supported by substantial evidence in the record. Anthony B. Karam, D.O., noted that Richardson's "gait was normal. She was stable at station. She was able to ambulate without the use of an assistive device." R. at 306. Dr. Dennis noted that Richardson "ambulated without assistance and used no assistive devices." R. at 310. Philip F. Corbett, M.D., noted that Richardson "has a normal gait" and "a normal heel-and-toe gait." R. at 323. Dr. John Vaughn noted that "she was able to sit, stand, and walk under her own power." R. at 326. Richardson's cane use during the hearing did not overturn the substantial evidence in the record the ALJ reviewed in making the RFC determination.

Moreover, the ALJ's final RFC determination was based upon record evidence supporting some physical limitations that could be associated with cane use. *See, e.g.,* R. at 330 (Megan Courtney, PA-C, noting that Richardson's "[g]ait is abnormal" but not describing or prescribing cane use). The record evidence that did discuss cane use was merely Richardson's narrative and only substantiated occasional use. *See* R. at 320 ("Ms. Richardson states that . . . [s]he was delivering medications in a wheelchair or walking around with a cane[.]"); R. at 338 ("she occasionally wears a brace . . . & uses a cane."); R. at 339 ("Straight Cane (occasionally)"); R. at 343 ("Straight Cane (occasionally)").

Even the hearing hardly substantiated the cane as a fixture. Richardson brought the device to the hearing, but her testimony regarding use was something less than overwhelming. She denied daily use. R. at 52. She tethered her use to grocery trips. *Id.* Even then, Claimant was highly

9

ambiguous regarding frequency: "Sometimes I use it. Sometimes I don't." *Id.* The record well supports the ALJ's election to treat the cane as an evanescent element of Richardson's story.

*Medical Evidence of Record*

Richardson next claims that ALJ Reynolds failed to properly evaluate the medical opinion evidence of record. Specifically, Richardson points to three alleged deficiencies: 1) failing to address the views of Frank A. Burke, M.D. at all, DE 18 at 8–9; 2) failing to appropriately weigh the opinion of Ashley F. Spalding, APRN, *id.* at 9–10; and 3) assigning substantial weight to Dr. Dennis, without accurately representing his opinion or adopting his findings within the RFC, *id.* at 11–12.

First, Richardson claims that ALJ Reynolds "completely failed to address the opinion of [Dr. Burke.]" *Id.* at 8. According to Richardson, the ALJ's failure is reversible error because "Dr. Burke's opinion differs from the ALJ's lay opinion that Ms. Richardson would be able to perform medium work[.]" *Id.* at 9. Dr. Burke's findings led him to conclude that Richardson was only capable of actions in line with the Agency's definition of light work. R. at 318–19. Dr. Burke examined Richardson's left knee and noted "tenderness along the lateral joint line." R. at 317. He also noted "mild valgus instability to stress testing with recurrence of her pain along the lateral joint line with this maneuver." *Id.* He concluded that Richardson "has some laxity to her LCL of a mild degree in the left knee[.]" R. at 318. Both Dr. Corbett (R. at 323) and Dr. Vaughn (R. at 327) referenced Dr. Burke's assessment and Vaughn explicitly agreed.

Initially, "an ALJ's failure to cite specific evidence does not indicate it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (citing *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."

10

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). ALJ Reynolds appears to cite, generically at least, to the Dr. Burke opinion.[5] *See, e.g.*, R. at 22, 25. ALJ Reynolds also stated that he reached his conclusions "[a]fter careful consideration of the entire record," (R. at 20), and he noted reasons for affording other physicians' opinions greater weight— namely that those opinions had "the advantage of reviewing the longitudinal record" and were not contradicted by the evidence at the hearing or otherwise in the record. R. at 26–27.

However, failure to discuss an examining physician opinion may "violate[] the requirement that the administrative agencies must explain their reasoning." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 528 (6th Cir. 2014) (citing *S.E.C. v. Chenery Corp.*, 67 S. Ct. 1575, 1577 (1947); *Hyatt Corp. v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991)). An ALJ "evaluate[s] every medical opinion [the SSA] receive[s]." 20 C.F.R. § 404.1527(c). § 404.1527 provides standards on evaluation of medical opinion evidence and adherence to these standards is "a matter of due process." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 801 (E.D. Mich. 2013) (citing *Wilson*, 378 F.3d at 544). An "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec. of Health and Human Servs.* 753 F.2d 517, 518 (6th Cir. 1985) (citation omitted).

---

[5] The exhibit ALJ Reynolds cites to includes, as a collective offering of one-time evaluations in the workers' compensation case context, the opinions of Dr. Burke, Dr. Corbett, and Dr. Vaughn. *See* R. at 316–27 (Exhibit No. 8F). The ALJ's citation to Exhibit 8F marginally indicates specificity from statements in Dr. Burke's opinion.

Here, the ALJ's silence is troubling, and in the Court's view reversible. Dr. Burke, an orthopedic surgeon, examined Richardson and found significant functional limitations with respect to her back and her left knee. These translated into lifting (20 lb.) and postural (sit/walk with positional change) constraints, many of which were directly contradictory, overall and in substance, to the final RFC determination. Dr. Burke's views, unmentioned in the decision, surely would foreclose medium work, the RFC lynchpin. *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, *3 (W.D.N.Y. May 26, 2020) ("Specifically, an ALJ's failure to evaluate a medical opinion is not harmless error when 'the omitted medical opinion[ ] contradict[s] the ALJ's RFC determination.'" (quoting *Parks v. Colvin*, No. 15-CV-6500-FPG, 2017 WL 279558, at *4 (W.D.N.Y. Jan. 23, 2017))). Dr. Burke examined the imaging records available and, in the physical evaluation of Richardson, found specific structural instability in her left knee. At best, the ALJ's RFC implicitly rejects Dr. Burke's opinion without explanation—the RFC did not track or incorporate his opinions and did not explain the treatment. *Compare* R. at 25–26 *with* R. at 318–19. By contrast, the ALJ had particular reasons for discounting or weighing the work and words of Drs. Vaughn, Ballard, Corbett, and Karam. The Court will not fill the interstices of a silent record with unstated reasons for weighing the medical opinion from Dr. Burke. The ALJ deemed the knee tendinosis and back issues severe impairments, R. at 20, and yet did not embrace several components of Burke's study. At worst, the ALJ missed Dr. Burke's opinion altogether, failing to consider a key piece of proof in violation of § 404.1527(c). In either case, the ALJ's omission is reversible error. *See Keeton*, 583 F. App'x at 528 ("On these facts, and particularly in light of Sanders' examination of Plaintiff and the consistency of his observations with other examining medical sources in the record whose opinions were ignored or discounted, the ALJ's failure to discuss Sanders' opinion in any substantive way violates the requirement that administrative

agencies must explain their reasoning."). The Court remands so the ALJ can consider the opinions of Dr. Burke and explain, in a way that permits review, such consideration.

Second, Richardson takes issue with ALJ Reynold's consideration of APRN Spalding.[6] To Richardson, APRN Spalding is a treating physician (or source) that was due special deference by the ALJ. DE 18 at 9. Under the treating-physician rule, an ALJ generally must give "greater deference" to "the opinions of treating physicians than to those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). And, when "discounting treating physicians' opinions," ALJs must provide good reasons—"reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 242–43.

It is true that the "treating physician" rule is really a generic descriptor for regulations regarding the SSA's evaluation of "treating source" opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[7] Nonetheless, for present purposes, the moniker is apt enough. Deference under the "treating source" rules is due only to "acceptable medical sources[.]" *id.*, which the applicable regs limit (with certain exceptions not relevant here) to "[l]icensed physicians[.]" 20 C.F.R. §

---

[6] APRN Spalding's opinion was a mere three sentences: "Mrs. Richardson is a patient of mine that struggles with chronic back and knee pain. She has difficulty with steps and would benefit from a first floor living quarters. Please call our office with any further questions." R. at 392.

[7] Per the SSA, a treating source is an "acceptable medical source" that "has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1527(a)(2). In turn, an "ongoing treatment relationship" exists "when the medical evidence establishes that [the claimant sees], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for" the claimant's "medical condition(s)." *Id.*

13

404.1513(a) (eff. 9/3/13–3/26/17).[8] Richardson concedes that APRN Spalding was not, for the relevant time, an "acceptable medical source" for opinion. DE 18 at 10. Under then governing law, ALJ Reynolds appropriately did not consider APRN Spalding under the rubric applicable to an acceptable medical source. R. at 27.

Alternatively, if Richardson intended to more generally indict the ALJ's handling of the APRN assessment, the Court sees no error.[9] An ALJ must evaluate non-treating-source opinions. *See, e.g.*, 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). That happened. *See* R. at 27. Judge Reynolds gave the APRN assessment "little weight," and considered it accordingly; he certainly did not reject it. *Id.* In fact, the ALJ's RFC determination is in line with APRN Spalding's vague opinion: ALJ Reynolds limited Richardson to only occasionally climbing ramps and stairs. R. at 23. Spalding's spare treatment

---

[8] A revised version of § 404.1513 took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01. The revision was implemented as part of a final rule that, among other changes, disposed of distinctions between evaluation of "acceptable" and other medical sources for claims filed on or **after** March 27, 2017. *See id.* The current framework—though retaining the preexisting evaluation principles for pre-March 2017 claims—omits any definition for "acceptable medical sources." *Compare* 20 C.F.R. § 404.1527, *with id.* at § 404.1513. However, the SSA accounted for this definitional deficit during the rulemaking process. For claims, like Richardson's, filed on or before the final rule's effective date, the SSA "continue[s] to use" certain prior rules, including the rule that "APRNs are not [acceptable medical sources], as explained in [then] current" 20 C.F.R. §§ 404.1513 & 416.913. *See* Proposed Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560-01 (NPRM proposed implementation plan); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (stating that SSA "decided to implement these final rules consistent with [the] proposed implementation process"). Thus, the APRN assessment was not entitled to "treating source" deference under governing law.

[9] Indeed, in the Court's view, the ALJ's handling and the supportive record are sufficient to satisfy the more stringent, though inapplicable, treating source requirements. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (conditioning deference to treating physician's opinion on the opinion being "supported by clinical and laboratory diagnostic evidence not inconsistent with other substantial evidence in the record"), *aff'd*, *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). APRN Spalding does not base her vague, three sentence opinion on any record evidence. R. at 392.

does not forbid stairs; it simply notes Richardson would "benefit" from "first floor living quarters" because of her "difficult with steps." R. at 392. The ALJ defensibly handled that evidence.

Finally, Richardson claims that ALJ Reynolds erred when assigning great weight to Dr. Dennis's opinion but failing to accurately represent the opinion or adopt the findings in the RFC. DE 18 at 11–12. Richardson claims that Dr. Dennis "found that Ms. Richards was moderately limited in the areas of social interaction" but did not include comparable restrictions in the RFC. *Id.* at 11. In actuality, Dr. Dennis concluded that Richardson's "capacity to sustain attention to complete tasks is mildly limited. Social interaction was generally mildly to moderately limited. Her overall capacity to adapt to pressures of normal daily work activity is probably mildly to moderately limited at this time." R. at 313. The ALJ quoted Dr. Dennis's opinion nearly identically in Step 4, R. at 27, yet included no mention of mental limitations in the RFC. The decision does not explain the discrepancy between the Step 2 finding of "no more than mild" limitations and giving great weight to Dr. Dennis's opinion finding "mild to moderate" mental limitations in two functional areas. Without some explanation for how an opinion with great weight ultimately factored into the contradictory RFC, the ALJ's decision on this point is too vague for judicial review. *See Chenery*, 67 S. Ct. at 1577 (explaining that a basis for decision "must be set forth with such clarity as to be understandable"). This squares with the Court's earlier RFC criticisms.

In sum, ALJ Reynolds reversibly erred by failing to fully discuss the impact of Richardson's mental limitations, failing to discuss and weigh input from Dr. Burke, and failing to account for the discrepancies in the handling of Dr. Dennis's opinion. Richardson requests that the Court reverse the decision and immediately award benefits. DE 18 at 12. "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and

15

the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This reversal turns on procedural missteps by the ALJ; remand for reconsideration, under proper process, is the appropriate result.

### III.   CONCLUSION

For the reasons stated, the ALJ's opinion does not survive review. Accordingly, the Court, on the bases discussed, **GRANTS** DE 17 **IN PART** and **DENIES** DE 20. Pursuant to 42 U.S.C. § 405(g), the Court **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion & Order. The Court will enter a separate Judgment.

This the 5th day of January, 2021.

Signed By:
*Robert E. Wier*  REW
United States District Judge